# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY RADDICK, an individual,<br><br>                        Plaintiff,<br>  v.<br><br>EQUILON ENTERPRISES, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>                        Defendants. | CASE NO. 07cv1153 BTM(LSP)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

Defendant Equilon Enterpises, LLC ("Defendant" or Equilon") has filed a motion for summary judgment. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. FACTUAL BACKGROUND

This action arises out of Equilon's termination of Plaintiff Judy Radick's franchise to operate a Texaco station at 905 Orpheus, Leucadia, CA 92024 (the "Property").

The Property is owned by the Hartman-Ecke Trust. (Banks Decl. ¶ 1.) Equilon, as successor in interest to Texaco, leased the Texaco branded Property from the Hartman-Ecke Trust through Equilon's assumption of a lease dated February 6, 1969, together with a First Modification of Lease dated May 12, 1990, a Second Modification of Lease, dated July 12, 1999, and a Third Modification of Lease, dated October 12, 2004. (Wisdom Decl. ¶ 3.)

From approximately 1978 until June 30, 2006, Plaintiff Judy Radick operated a service

station on the Property. Commencing in October, 2000, Plaintiff and Equilon entered into a series of Retail Facility Leases and Retail Sales Agreements, allowing Plaintiff to operate the service station under the Texaco brand name on the Property. (Exs. 1, 2, 7, 8 to Radick Dep. (Ex. B to Wofford Decl.)).

Equilon's right to use the Texaco trademark was to expire on June 30, 2006. This fact was revealed in a Franchise Disclosure Statement received by Plaintiff on October 26, 2004. (Ex. 6 to Radick Dep.) In her deposition, Plaintiff admitted that as early as 2001, she understood that Shell would not be able to continue using the Texaco brand name after June 30, 2006. (Radick Dep. 28:6-10.)

Under the Third Modification of Lease between Equilon and the Hartman-Ecke Trust, Equilon was provided the option to extend the term of the underlying lease for an additional five years commencing on March 23, 2005. (Ex. 1 to Banks Decl.) The Third Modification of Lease also provided that during the option term commencing on March 23, 2005, "the Tenant shall have the right to terminate the Lease effective June 30, 2006, provided that Tenant provides Landlord with written notice of such intent to terminate no later than January 31, 2006."

An Amendment to the Retail Facility Lease between Equilon and Plaintiff dated January 1, 2005, provided:

> Notice – Underlying leases(s): The Premises are subject to an underlying leases(s) that will expire on March 22, 2010. **The underlying leases(s) might, however, expire earlier on June 30, 2006 by Lessor giving 150 days advance notice to its landlord(s) due to Lessor's loss of the right to use the Texaco trademark on June 30, 2006. Lessee acknowledges the situation and understands that Lessor's current intentions are to early terminate the underlying leases(s) and this Lease** but that circumstances might change whereby the underlying lease(s) would not be early terminated, this Lease would not early terminate and the designated brand Identification would be changed from Texaco to Shell.

(Ex. 9 to Radick Dep.)

On November 16, 2005, Equilon notified Philip Banks, Trustee of the Hartmann-Ecke Trust, that Equilon was exercising the option to terminate the underlying lease, effective June 30, 2006. (Ex. 2 to Banks Decl.) On December 5, 2005, Equilon sent Plaintiff a Notice of Termination, which explained that the franchise agreements would be terminated effective

1  June 30, 2006.  (Ex. 13 to Radick Dep.)  The Notice stated: "The reason for the termination
2  is the loss of Franchisor's right to grant possession of the Premises because of the expiration
3  or other termination of an underlying lease between a third party and Franchisor covering the
4  Premises."

5  On December 5, 2005, Equilon also sent Plaintiff a Bona Fide Offer to Sell Personal
6  Property ("Offer to Sell") and an Offer to Assign Option Letter Agreement ("Assignment
7  Agreement").  (Exs. 14 & 15 to Radick Dep.)  In the Offer to Sell, Equilon offered to sell its
8  personal property on the premises to Plaintiff for $121,262.00.   Plaintiff objected to the
9  purchase price (Ex. 16 to Radick Dep.), and no purchase of the personal property was ever
10 consummated.  The Assignment Agreement explained that the underlying lease contained
11 an extension option ("Option") and offered to assign the Option to Plaintiff under certain
12 enumerated conditions.   Plaintiff never accepted the offer to assign the Option.

13 On January 24, 2006, Banks received an undated letter from Equilon rescinding its
14 earlier Notice of Termination of Lease but reserving its right to terminate at a later date.  (Ex.
15 4 to Banks Decl.)  On January 27, 2006, Banks received another Notice of Termination,
16 which advised Banks that Equilon was exercising its option to terminate the lease effective
17 June 30, 2006.  (Ex. 5 to Banks Decl.)

18 Between December 2005 and March 2006, Banks and Plaintiff engaged in
19 negotiations regarding a potential new lease of the Property to Plaintiff.  (Banks Decl. ¶¶ 7-
20 13.)  However, Banks and Plaintiff were unable to agree on the terms of the potential new
21 lease.  Therefore, effective June 30, 2006, Plaintiff could no longer operate her service
22 station on the Property.

23 Plaintiff commenced this action on June 26, 2007.  Plaintiff asserts a claim for violation
24 of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, et seq., and a claim
25 for declaratory relief.
26 ///
27 ///
28

## II. **DISCUSSION**

Equilon moves for summary judgment, arguing that its termination of Plaintiff's franchise fully complied with the PMPA. First and foremost, Equilon contends that it had valid grounds under the PMPA for terminating the franchise relationship. Equilon also contends that it gave Plaintiff the required notice of termination, offered Plaintiff all options Equilon had under the master lease, and provided Plaintiff a bona fide offer to purchase the personal property at the Leucadia station. The Court denies summary judgment because there are triable issue of fact regarding whether the termination of Plaintiff's franchise was valid under the PMPA.

The purpose of the PMPA is to protect gasoline industry franchisees from "arbitrary or discriminatory termination or non-renewal of their franchise." S. Rep. No. 731, 95th Cong., 2d Sess. 15 (1978), reprinted in 1978 U.S.C.C.A.N. 873, 874. To this end, the PMPA limits the reasons for which a franchisor can terminate a franchise. 15 U.S.C. § 2802(b). One of the listed reasons is: "The occurrence of an event which is relevant to the franchise relations and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . . ." 15 U.S.C. § 2802(b)(2)(C).

The term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes, among other things:

> [L]oss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if--
>
> > (A) the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise--
> >
> > > (i) of the duration of the underlying lease; and
> > >
> > > (ii) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal);
> >
> > (B) during the 90-day period after notification was given pursuant to section 2804 of this title, the franchisor offers to assign to the franchisee any option to extend the underlying lease or option to purchase the marketing premises that is held by the franchisor, except that the franchisor may condition the assignment upon receipt by the franchisor of--

>> (i) an unconditional release executed by both the landowner and the franchisee releasing the franchisor from any and all liability accruing after the date of the assignment for--
>
>> > (I) financial obligations under the option (or the resulting extended lease or purchase agreement);
>> >
>> > (II) environmental contamination to (or originating from) the marketing premises; or
>> >
>> > (III) the operation or condition of the marketing premises; and
>
>> (ii) an instrument executed by both the landowner and the franchisee that ensures the franchisor and the contractors of the franchisor reasonable access to the marketing premises for the purpose of testing for and remediating any environmental contamination that may be present at the premises . . . .

15 U.S.C. § 2802(c)(B)(4).

Under 15 U.S.C. § 2804, prior to the termination of any franchise, the franchisor must furnish written notification of such termination to the franchisee. With certain exceptions, the notification must be provided not less than 90 days prior to the date on which such termination takes effect. 15 U.S.C. § 2804(a)(2). The notification must contain, among other things, "a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor." 15 U.S.C. § 2804(c)(3)(A).

Equilon provided timely notice to Plaintiff that the franchise would be terminated due to the expiration of the underlying lease. That Equilon chose to end the lease does not make a difference with respect to the application of 15 U.S.C. §§ 2802(b)(2)(C) and (c)(B)(4). See Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 1141-42 (11th Cir. 1988) (explaining that section 2802(c)(4) encompasses the voluntary relinquishment of a lease); Veracka v. Shell Oil Co., 655 F.2d 445 (1st Cir. 1981) (holding that Shell's decision not to extend the lease fell within the scope of section 2802(c)(4)). The PMPA amendments of 1994 did not make any distinction between voluntary and involuntary loss of lease, and the reasoning of Hutchens and Veracka remains persuasive. See PDV Midwest Refining LLC v. Armada Oil & Gas Co., 116 F. Supp. 2d 835, 847-48 (E.D. Mich. 1999) (rejecting defendants' argument that Veracka was of questionable authority in light of the PMPA amendments).

However, it appears that Equilon did not offer to assign to Plaintiff a right of first

refusal Equilon held under the master lease.[1]  Under 15 U.S.C. § 2802(c)(4)(B), Equilon was required to offer to assign to Plaintiff "any option to extend the underlying lease or option to purchase the marketing premises."  A right of first refusal is not the same thing as an "option to purchase."[2]  However, the Ninth Circuit has observed that "[a]s remedial legislation, the [PMPA] must be given a liberal construction consistent with its goal of protecting franchisees."  Hilo v. Exxon Corp., 997 F.2d 641, 643 (9th Cir. 1993).

In Mustang Marketing, Inc. v. Chevron Products Co., 406 F.3d 600 (9th Cir. 2005), the Court held that Chevron was required to offer to assign a prior right to lease option under which Chevron retained the prior right to lease the whole or any part of the pleased premises if the landlord received from a third party an acceptable bona fide offer to lease the property or if the landlord offered to lease such property to another.  In reaching this holding, the Ninth Circuit emphasized that Congress intended to prevent situations where franchisors evict the operators by not renewing the underlying lease but continue to hold interests in the property by retaining options to purchase the property or to extend the lease.  Id. at 607.  Under the reasoning of Mustang, Equilon was obligated to offer to assign to Plaintiff the right of first refusal option.

According to the evidence before the Court, Equilon did not offer to assign to Plaintiff the right of first refusal.  The first paragraph of the Assignment Agreement explains, "The

---

[1] Plaintiff also argues that Equilon also failed to offer to assign the option to extend the lease because it had already exercised the right to extend the lease to 2010 and then terminated that option, leaving no option to exercise.  According to Plaintiff, Equilon should have issued a Notice of Termination prior to the natural expiration of the base lease on March 22, 2005, and should have offered to assign the option to extend to 2010.  However, section 2802(c)(4)(B) requires only that the franchisor offer to assign to the franchisee any option to extend the underlying lease "that is held by the franchisor" at the time.  Equilon offered to assign what option to extend it had (it is unclear whether Equilon could re-exercise the option to extend by rescinding the termination of the base lease).  The PMPA did not require Equilon to act in the best business interests of Plaintiff by giving notice of termination earlier.

[2] Under a right of first refusal, the holder of the right "has the option to purchase the grantor's real estate on the terms and conditions of sale contained in a bona fide offer by a third party to purchase such real estate, provided it is an offer that the grantor is otherwise willing to accept."  Black's Law Dictionary (6th ed. 1990).  In contrast, an option to purchase is "[a] right acquired by contract to accept or reject a present offer within a limited or reasonable time . . . ."  Id.

Underlying Lease contains an extension option ("Option"). In consideration of the requirements of Section 2802(c)(4)(B) of the Petroleum Marketing Practices Act ("PMPA"), Franchisor hereby offers to assign the Option to Assignee, pursuant to the following express terms and conditions." (Ex. 14 to Radick Dep.) Paragraph two of the Assignment Agreement provides:

> **OPTION.** Franchisor hereby assigns, transfers and conveys, and Assignee hereby acquires and accepts, the right to purchase the premises and/or a right to extend the Underlying Leases, pursuant to the Underlying Leases and the letter extending the obligation date attached hereto and made a part hereof. Upon acceptance, Assignee shall be responsible for the payment of all sums required by the Underlying Lease in connection with the Option. . . .

(Id.) Although paragraph two mentions "the right to purchase the premises and/or a right to extend," the Assignment Agreement defines "Option" to mean the extension option. No reference is ever made to the right of first refusal under the master lease.

More troubling, it appears that Equilon was considering purchasing the Property and was intentionally holding on to the right of first refusal. In a letter dated March 31, 2006 from Banks to the beneficiaries of the Hartmann-Ecke Trust, Banks explained:

> Further adding to our difficulties is that under the 1967 lease, Equilon has a right of first refusal to buy the property. **I have inquired if they have any interest in purchasing the property and they are considering it. If they are not serious buyers, I will try to get the right of first refusal eliminated so that we can market the property without this daunting provision clouding good faith sales negotiations with third parties**, although Equilon has no obligation to agree.

(Ex. 12 to Banks Decl.) (Emphasis added.)

Whether Equilon actually intended on purchasing the Property after terminating Plaintiff's franchise, Equilon failed to offer to assign the right of first refusal as required by section 2802(c)(4)(B). "The offer to assign is a condition to the very validity of the Non-renewal Notice." Mustang Marketing, 406 F.3d at 606. Therefore, based on the record before the Court, the notice of termination was not valid.

Furthermore, in light of the fact that Equilon apparently held on to its right of first refusal, there is a question as to whether the base lease "expired" within the meaning of the statute. In Mustang, the Ninth Circuit explained, "Expiration of the underlying lease is not to be interpreted literally." Id. at 608. Instead, courts scrutinize "the franchisor's subjective

intent, its continuing control over the marketing premises, and its actual or eventual right to continued possession." Id. Although Equilon did not ultimately purchase the Property, there is evidence that Equilon was entertaining the idea and purposefully retained the right of first refusal.

Equilon argues that it had a separate and independent ground to terminate the franchise relationship under the PMPA – i.e., the loss of Equilon's right to grant Plaintiff use of the Texaco trademark effective June 30, 2006. The loss of the franchisor's right to grant the right to use the trademark which is the subject of the franchise is a lawful reason for terminating a franchise. 15 U.S.C. § 2802(c)(6). However, the only reason for termination listed in the Notice of Termination was the expiration of the master lease. Unlike the cases relied upon by Equilon, the notice was not vague or lacking in specifics. The notice simply did not include loss of the right to use the Texaco trademark as a reason for termination.

Section 2804(c)(3)(A) requires that the written notice of termination state the reasons for the termination. "It is well established that the notice requirements of the PMPA must be strictly complied with." Khorenian v. Union Oil Co. of California, 761 F.2d 533, 535 n. 1 (9th Cir. 1985). Therefore, a court cannot rely on an independent basis for termination if that basis was not listed as a reason for termination in the written notice. Id.

There is a triable issue of material fact regarding the validity of the termination of Plaintiff's franchise under the PMPA. Therefore, Equilon's motion for summary judgment is **DENIED**. Equilon's objections to Plaintiff's evidence are overruled as moot because the Court does not rely on the evidence that is the subject of the objections.

### III. CONCLUSION

For the reasons discussed above, Defendant Equilon's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 3, 2008

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge